LSOL GOTHARD, Judge.
Defendant, State of Louisiana through the Department of Public Safety and Corrections, appeals from the judgment of the trial court which found that plaintiff had proved an inverse condemnation and which awarded damages of $126,500.00, and from a judgment awarding to plaintiff attorney fees and costs. For the following reasons, we reverse the decision of the trial court.

FACTS

Troop B of the Louisiana State Police, the State Department of Public Safety and Corrections (DPSC), was originally located at the intersection of Veterans Highway and Pontchartrain Boulevard. Because the site was too small and antiquated, plans were made to relocate. Several sites were considered, and it was subsequently decided to move the headquarters to the |snortheast quadrant of the interchange at Interstate 10 and Williams Boulevard, property owned by the State Department of Transportation and Development (DOTD). A Solicitation of Views letter was sent to various persons, including the representatives of the voters who lived in the area of I — 10 and Williams Boulevard. Thereafter, the DOTD applied to the Federal Housing Authority for a categorical exclusion, which alleviated the need for an impact study and a public hearing. After the grant of the exclusion, in June of 1992, a Joint Use agreement was negotiated and signed between the DPSC and the DOTD.
Thereafter, the plans to build Troop B were drafted. There were several components to the project, including a radio tower, automobile maintenance garage, two underground storage tanks, ammunition, and firearms. The project also contains *869 future plans to build a heliport. For this reason, the location of the building was shifted to the left side of the property, thereby maximizing available space for the future heliport.
Prior to the start of construction, Reverend Easley of the neighboring Baptist Church voiced his concerns about the location of the building to Captain Ryan, Commander of Troop B. His concerns were alleviated by the change in plans, which shifted the building away from the church.
Plaintiff, Dr. Stagni, is the owner of the property at 2110 I — 10 Service Road, located across the street. The property consists of two office buildings and a vacant lot. On the day that construction began, in November of 1994, Dr. Stagni (plaintiff) came over to the property. He was upset and said he had no prior knowledge of the plans to relocate Troop B. He first filed for an injunction on August 25, 1995. The matter was heard, and the order of 1¿dismissal was entered on October 10, 1995. Plaintiffs filed no appeal of the court’s ruling. The current suit was subsequently filed. In this suit, Dr. Stagni alleges that the building of Troop B blocked the view of his property from the interstate and that the blocking of the view lowered the value of his property, interfering with his right to alienate. Dr. Stagni did not claim loss of business income, since he moved his business in 1996.
After a trial on the merits, the trial court rendered judgment on September 1, 2000 in favor of plaintiff. The court found that, for the purposes of inverse condemnation, there had been a taking, that there was excessive or abusive conduct to the landowner, and that plaintiffs property suffered a diminution of value as a result. The trial court awarded damages of $126,500.00 for loss of value to the property, and expert witness fees of $500.00. The defendant was unnamed in the judgment. On March 12, 2001, pursuant to a motion to amend filed by plaintiff, the trial court rendered an amended judgment specifying the State of Louisiana, through the Department of Public Safety and Corrections, and the proper party cast in judgment.
Plaintiff also filed a rule for attorney fees and costs, and on March 12, 2001, the trial judge granted the rule and awarded attorney fees of $51,807.00, court costs of $1,879.55, deposition costs of $440.15, and appraisal fees for plaintiffs expert of $6,800.00.
The Department of Public Safety and Corrections appeals from the September 1, 2000 judgment and from both judgments of March 12, 2001. In its appeal, defendant alleges that the trial court erred in amending the judgment absent a timely motion for new trial, that the trial court erred in | ¿finding the DPSC liable under the theory of inverse condemnation, and that the trial erred in its award of attorney fees and appraisal fees. Because we find merit to defendant’s contention that the trial court was in error in finding defendant liable under the theory of inverse condemnation, we need not reach the other allegations raised.

ANALYSIS

Defendants allege that the trial court erred in finding it liable to the plaintiff under the theory of inverse condemnation.
Our Supreme Court has adopted a three-part analysis in determining whether a claimant is entitled to compensation for inverse condemnation:
Because the taking and damaging of legal property rights, as opposed to the concrete objects of rights, is by nature abstract and conceptual and often incompletely understood, there is an uncommon need for a firm framework of *870 analysis. Accordingly, we have decided to adopt a three-pronged analysis, similar to that recommended by Professor Stoebuck, in determining whether a claimant is entitled to eminent domain compensation. Compare Stoebuck, [Nontrespassory Takings in Eminent Domain 4 (1977) ], at 19. Under this analysis, we must first determine if a person’s legal right with respect to a thing or an object has been affected. In other words, we must be able to identify a recognized species of private property right that has been affected, regardless of whether causes of action may exist on other theories; otherwise, it cannot be said there has been an exercise of the power of eminent domain. Second, if it is determined that property is involved, we must decide whether the property, either a right or a thing, has been taken or damaged, in a constitutional sense. If property is taken or damaged, one may say that there has been an attempted exercise of the eminent domain power. The final question then is whether the taking or damaging is for a public purpose under Article I, § 4.
State Through Dept. of Transp. and Development v. Chambers Inv. Co., Inv., 595 So.2d 598, 603 (La.1992).
Thus, the first step is to determine whether the interest which plaintiff alleges was adversely affected constitutes property within the purview of lfieminent domain law. In this case, plaintiff alleges, and the trial court found, that property value is a recognized right of property ownership because it affects that ability of a landowner to dispose of his property. It is this interest which plaintiff alleged was damaged by defendant. However, we need not discuss whether a decrease in property value is sufficient to affect an owner’s ability to alienate his property.
Next, it must be determined whether the property was taken or damaged in a constitutional sense. In reaching this decision, the trial court is mandated to consider Louisiana Civil Code articles 667 and 668:
La. C.C. art. 667:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultra-hazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.
La. C.C. art. 668:
Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by *871 such elevation he should darken the flights of his neighbors’s [neighbor’s] house, because this act occasions only an inconvenience, but not a real damage.
The building of Troop B did not seize any of plaintiffs land, it did not damage any of his property, and it did not restrict any ingress or egress. Likewise, it created no nuisance. Plaintiff alleges that the harm caused by the building of Troop B is that his property now cannot be seen from the Interstate, thereby lowering his property value.
A property owner has no statutory right of view, or right to see, absent a servitude. We believe that, pursuant to the above cited Codal articles, a property owner, likewise, has no right to be seen, absent a servitude, in the laws of this State. Because there is no right to be seen, the building of Troop B, which restricted the view of plaintiffs property from the Interstate, is not a compensable damage. Accordingly, we find that the trial court erred in finding that the defendant’s actions, in building Troop B, caused compensable damage to plaintiff.

CONCLUSION

For the above discussed reasons, the Judgment of the trial court of September 1, 2000, the Amended Judgment of March 12, 2001, and the Judgment of March 12, 2001 awarding attorney’s fees and costs are reversed, and Judgment is rendered in favor of defendant, the Department of Public Safety and Corrections, dismissing plaintiffs suit. All costs are assessed against plaintiff/appellee.
REVERSED.